FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 14, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARIE L.,[1] | No.   4:25-cv-5077-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR LIMITED PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Carie L. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits for the closed period of March 21, 2019, to August 3, 2021, because the ALJ erred by finding that she did not have severe impairments of bipolar disorder and anxiety. As is explained below, the ALJ erred by not finding

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Plaintiff's bipolar disorder to be a severe error. A limited remand to obtain an opinion from a vocational expert is ordered to determine if this error impacted the nondisability findings.

## I.    Background

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging an onset date of March 21, 2019, with a date last insured of December 31, 2023.[2] The applications were denied initially and on reconsideration, and a hearing was requested.[3] These denials followed a denial of Plaintiff's prior application for disability benefits in 2017.[4] In the prior proceeding, the ALJ's denial of benefits was affirmed by the district court—both decisions are part of the instant record.[5]

In February 2024, a telephonic hearing was held before Administrative Law Judge (ALJ) Lori Freund regarding Plaintiff's

_____

[2] AR 17, 304–42.

[3] AR 202–21.

[4] AR 17.

[5] AR 47–65, 72–96.

current applications. Plaintiff's counsel and medical expert Dr. Ann

Kegge/Monis[6] attended; Plaintiff did not attend.[7] At the hearing,

Plaintiff's counsel requested a closed period of disability from March

21, 2019, to August 3, 2021, as Plaintiff returned to substantial gainful

activity.[8] The ALJ and Plaintiff's counsel discussed trying to obtain a

medical release to receive additional medical records for the earlier

portion of the at-issue period.[9] Obtaining additional medical records

presented a challenge because the SSA-827 form authorizing the

disclosure of medical information to the Social Security Administration

previously signed by Plaintiff had expired, and Plaintiff's counsel was

_____

[6] The transcript from the administrative hearing referred to the

testifying medical expert as Dr. Ann Kegge. AR 31–33, 39. The medical

expert testified that the admitted CV was an accurate reflection of the

expert's qualifications. The admitted CV was for Dr. Ann Monis, PA.

AR 662–65.

[7] AR 18, 31–46.

[8] AR 34.

[9] AR 43–44.

DISPOSITIVE ORDER - 3

unable to reach Plaintiff.[10] The testifying medical expert stated that she would benefit from additional medical records to form an opinion as to Plaintiff's non-exertional abilities.[11] The ALJ granted Plaintiff's counsel more time to obtain additional medical records before issuing a decision.[12] After the hearing, Plaintiff's counsel notified the ALJ that "[w]e were informed that there are no additional records outstanding for" Plaintiff.[13]

The ALJ then issued a decision denying benefits.[14] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" because the objective evidence did not support the extent of her reported symptoms

---

[10] *See* AR 34–46, 515.

[11] AR 41–44.

[12] AR 42–46.

[13] AR 445.

[14] AR 14–30. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

and the prescribed medication improved her symptoms.[15] The ALJ also found:

- the statement of Suzanne Kieffer, LICSWA, MHP, MSW, not persuasive.

- the prior administrative medical findings of Sheri Tomak, PsyD, and Don Johnson, PhD, "less persuasive in considering the severity of the claimant's mental impairments, but they are somewhat persuasive in determining any limitations from those impairments."[16]

As to the sequential disability analysis, the ALJ found:

---

[15] AR 22. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[16] AR 23–24. Because Plaintiff does not challenge the physical-functioning findings, the prior administrative physical-functioning findings are not discussed. *See Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) (deciding that the claimant forfeited an argument by not challenging the ALJ's findings in that regard).

- Plaintiff met the insured status requirements through December 31, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity since March 21, 2019, the alleged onset date, through August 3, 2021.

- Step two: Plaintiff had the following medically determinable impairments: bipolar disorder and hypothyroidism; however, these impairments were not severe either individually or in combination.[17]

Therefore, the ALJ found that Plaintiff was not disabled during the closed period.[18]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[19]

---

[17] AR 17–25.

[18] AR 25.

[19] AR 1–6; ECF No. 1.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[20] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21] The court looks to the entire record to determine if substantial evidence supports the ALJ's findings.[22]

---

[20] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[22] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring

1

### III.  Analysis

2      Plaintiff argues the ALJ erred by ending the analysis at step two,

3  by failing to develop the record, when evaluating Plaintiff's symptom

4  reports, and by rejecting the assessments of her treating mental health

5  therapist. The Commissioner argues the ALJ did not error and that the

6  nondisability finding is supported by substantial evidence. As is

7  explained below, the ALJ erred by not finding bipolar disorder to be a

8  severe impairment at step two. This error requires a limited remand.

9  **A.    Step Two (Severe Impairment): Plaintiff establishes error.**

10      Plaintiff contends the ALJ erred at step two by failing to find her

11  impairments of bipolar disorder and anxiety as severe impairments. In

12  response, the Commissioner counters that Plaintiff did not establish

13  anxiety as a medically determinable impairment and that the ALJ

14

15  _____

16  the court to consider the entire record, not simply the evidence cited by

17  the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386

18  (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not

19  indicate that such evidence was not considered[.]").

reasonably found Plaintiff does not have a severe mental impairment. As is explained below, the ALJ erred at step two as to bipolar disorder.

1.  Standard

At step two, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[23] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[24] To be severe, the medical evidence must establish that the impairment would have more than a minimal effect on the claimant's ability to work.[25]

Step two "is not meant to identify the impairments that should be taken into account when determining the RFC" as step two is meant

---

[23] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[24] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[25] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical Impairments That Are Not Severe).

*only* to screen out weak claims, whereas the crafted RFC must consider all impairments, both severe and non-severe.[26]

### 2. The ALJ's step-two findings

The ALJ acknowledged that Dr. Tomak and Dr. Johnson, who issued the prior administrative medical findings as to Plaintiff's mental-health conditions, opined that Plaintiff was moderately limited in the paragraph B criteria of adapting or managing herself.[27] Yet, the ALJ found this moderate adaptation limitation "unsupported by the records from the alleged period of disability," and instead were based solely on the prior ALJ decision; and as to Dr. Johnson, the ALJ also found that his opinion that Plaintiff was unable to handle complex instructions was not related to her ability to adapt or manage herself.[28] As a result, the ALJ found that Plaintiff was only mildly limited in each of the four functional areas: understanding, remembering, or applying information; interacting with others; concentrating,

---

[26] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[27] AR 23–24.

[28] AR 24–25.

persisting, or maintaining pace; and adapting or managing herself.[29] Because the ALJ determined that Plaintiff's mental-health impairments did not have more than a minimal effect on her ability to work, the ALJ found that Plaintiff did not have a severe mental-health impairment.

3.  Analysis

    a.  *Anxiety*

As an initial step-two matter, the Court agrees with the Commissioner that Plaintiff failed to adequately support her bare-bones contention that the ALJ erred by failing to find anxiety to be a severe impairment.[30] Moreover, like the prior ALJ determined in 2019, the medical records reveal that anxiety is a symptom of Plaintiff's

---

[29] AR 24.

[30] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

bipolar disorder. Therefore, the Court's review focuses on the ALJ's evaluation of bipolar disorder.

               *b.*    *Bipolar Disorder*

As to Plaintiff's bipolar disorder, the ALJ erred by not finding it to be a severe impairment. This error resulted from the ALJ's mistaken finding that Dr. Tomak and Dr. Johnson based their determinations that Plaintiff suffers from a severe bipolar disorder solely on the prior ALJ decision rather than a review of the medical evidence for the at-issue period.[31]

Dr. Tomak did review the prior ALJ decision and agree with the prior ALJ's RFC, but this agreement was based on Dr. Tomak's review of medical records received in July 2021 from Lourdes Counseling Center and Prosser Primary Care for the at-issue period.[32] Based on Dr. Tomak's review of the received medical records, Dr. Tomak found Plaintiff to have a severe bipolar disorder because she was moderately limited in her ability to adapt or manage herself in that she would have

---

[31] AR 24.

[32] AR 97–127.

difficulty responding appropriately to changes in the work setting.[33] To explain the adaptation limitation, Dr. Tomak wrote, "See [prior] ALJ."[34] The 2019 ALJ's RFC limited Plaintiff to "a routine, predictable work environment with no more than occasional changes, and no travel required as a job duty."[35] Dr. Tomak's reference to the prior RFC does not equate to a finding that Dr. Tomak only concluded that Plaintiff had a severe bipolar disorder because of the prior ALJ decision. Instead, Dr. Tomak based her finding that Plaintiff had a severe bipolar disorder on the received at-issue medical evidence.

---

[33] AR 99–107. *See* AR 102 ("RPC: Case reviewed. The alleged severity of psychological impairment does not appear fully supported. Updated objective TS MER does not seem to suggest significant changes since the ALJ. Consequential, the 3/20/19 ALJ decision remains reasonable and is adopted.").

[34] AR 107.

[35] AR 55.

More medical records for the at-issue period were received prior to Dr. Johnson's reconsideration-level review.[36] After reviewing these additional medical records, Dr. Johnson initially agreed with Dr. Tomak's assessment that Plaintiff was moderately limited in her ability to adapt or manage herself because her ability to respond appropriately to changes in the work setting was moderately limited.[37] Like Dr. Tomak, Dr. Johnson wrote "see [prior] ALJ" to explain Plaintiff's adaptation limitations, meaning routine, predictable work environment with no more than occasional changes, and no travel required as a job duty.[38] Yet, Dr. Johnson then also wrote, "She is able to understand, carry out and remember detailed not complex instructions, make decisions, concentrate for extended periods, and interact appropriately with others, and respond to changes in a work setting."[39] This extra language creates an ambiguity as to what

---

[36] AR 132–33.

[37] AR 129–77.

[38] AR 174, 55.

[39] AR 141, 157, 174, 192.

Dr. Johnson's opinions were as to Plaintiff's ability to respond to changes in a work setting, i.e., could she handle more than occasional changes if the work instructions were not complex? This ambiguity was not clarified either at the administrative level or by the ALJ. Regardless of the ambiguity as to what RFC accommodated Plaintiff's moderate adaption limitations, Dr. Johnson clearly listed bipolar disorder as a severe impairment. Moreover, on review, the Court construes this ambiguity in Plaintiff's favor and accepts that Dr. Johnson recommended that Plaintiff be limited to non-complex instructions and that both Dr. Johnson and Dr. Tomak recommended that Plaintiff be limited to a routine, predictable work environment with no more than occasional changes, and no travel required as a job duty.

In summary, the ALJ erred by rejecting each of the prior administrative medical findings that Plaintiff was moderately limited in her ability to adapt and manage herself—and that bipolar disorder was a severe impairment. Thus, and for the additional reasons discussed below, the ALJ's determination that Plaintiff's adaptation limitations were minimal is not supported by substantial evidence.

**B.    Impact of Step-Two Error**

Plaintiff argues the ALJ's failure to find bipolar disorder as a severe impairment—along with the ALJ's evaluation of MSW Kieffer's assessments and Plaintiff's symptom reports—requires a development of the medical record and further proceedings. Although the Court agrees that remand is needed to remedy the step-two error, it is unnecessary to develop the medical record; only a limited remand to obtain vocational expert testimony is needed.

1.    <u>Further development of the medical record is unnecessary.</u>

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[40] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[41]

As was discussed at the administrative hearing, there are few mental-health records for the first part of the closed period—with the

---

[40] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[41] *Id.* at 1184.

first medication-management record being dated January 13, 2021, and counseling record dated January 14, 2021.[42] However, other records in the file make clear that Plaintiff was receiving mental-health treatment prior to January 2021. The medication-management record from January 2021 reveals that Plaintiff had a medication-management appointment in December 2020.[43] And the prior ALJ decision and the district court opinion affirming that prior ALJ decision—both of which are part of this file—reveal that Plaintiff was receiving mental-health treatment, both counseling with MSW Kieffer and medication management—years prior to the at-issue closed period, although such treatment may have been paused during the Covid pandemic as mentioned by Plaintiff's counsel.[44]

Plaintiff's counsel argues that further steps should have been taken by the ALJ to obtain medical records for the earlier part of the

---

[42] AR 473–75, 484–87.

[43] AR 485.

[44] *See, e.g.*, AR 57; AR 80 (stating that Plaintiff was in counseling with Ms. Kieffer from the fall of 2016 through 2018).

at-issue period, particularly because the testifying medical expert said she needed to review more records to assess how Plaintiff was impacted by her bipolar disorder. On this point, at the hearing, Plaintiff's counsel stated, "I know she had some problems during COVID of not having treatment for a while, but there should be some records prior to that January '21. But by then our records authorizations had surpassed the date set, and I can't get a hold of the client to get an updated one."[45] Plaintiff's counsel offered to reach out to Lourdes Counseling Center[46] to try and get the records for the earlier portion of the closed period but discussed difficulties getting such without a new approval from Plaintiff, with whom counsel was having difficulties contacting.[47] The ALJ paused the administrative-hearing process to allow Plaintiff's counsel the opportunity to obtain additional medical records. Thereafter, Plaintiff's counsel notified the ALJ, "We were informed that there are no additional records outstanding for"

---

[45] AR 36.

[46] *See, e.g.*, AR 46 (transcribing incorrectly "Lourdes" as "Lawrence").

[47] AR 43–46.

Plaintiff.[48] Further, Plaintiff did not submit an updated form SSA-827 (Authorization to Disclose Information to the Social Security Administration), nor did Plaintiff attend the hearing.

Under these circumstances, the ALJ satisfied her duty to develop the medical record.

### 2.    Evaluating Plaintiff's reported symptoms.

Because Plaintiff did not attend the hearing, she did not offer testimony about her symptoms. She did report symptoms on her July 2021 Function Report, including reporting that she has abrupt mood swings, variable sleep causing fatigue and emotional lability, the need for reminders to take medications, difficulty going to stores, deficits in social interactions, and difficulties with focus and concentration affecting her ability to follow directions and stay on-task.[49]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the

---

[48] AR 445.

[49] AR 383–90.

1  rationale for discounting the symptoms with supporting citation to

2  evidence.[50] This requires the ALJ to "show her work" and provide a

3  "rationale . . . clear enough that it has the power to convince" the

4  reviewing court.[51]

5      Plaintiff argues the ALJ improperly rejected her reported

6  disabling symptoms without providing clear and convincing reasons for

7  doing so. The Court largely disagrees. Substantial evidence supports

8  the ALJ's discounting of Plaintiff's more disabling symptom reports but

9  substantial evidence does not support discounting Plaintiff's reported

10  symptoms consistent with moderate adaptation limitations.

11      The ALJ found Plaintiff's symptom reports "inconsistent because

12  the objective evidence does not support the level of limitation

13  claimed."[52] The ALJ summarized several medical records, emphasizing

---

15  [50] 20 C.F.R. §§ 404.1529(c), 416.929(c); *Smartt v. Kijakazi*, 53 F.4th

16  489, 499 (9th Cir. 2022); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th

17  Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

18  [51] *Smartt*, 53 F.4th at 499 (alteration added).

19  [52] AR 22.

the improvement Plaintiff experienced with her symptoms when taking medication:

- In February 2021, Plaintiff reported to her medication-management provider that she was "actually doing pretty good" with the addition of Risperdal."[53]

- In the spring of 2021, she was reminded to use her hydroxyzine if she was anxious when she went out in public.[54]

- In July 2021, "she recognized how well her medications worked for her and that she could not miss them."[55]

Plaintiff does not contest that medication assisted and that ultimately she achieved sufficient stability to maintain full-time work; however, she argues that the ALJ failed to fairly consider that during the closed period her mental-health symptoms would wax to an extent preventing her from maintaining fulltime work. Plaintiff accurately identifies that medical records reveal that her bipolar symptoms

---

[53] AR 22 (citing AR 505).

[54] AR 22.

[55] AR 22–23.

waxed. For instance, medical records reflect both waxing and waning symptoms:

- January 13, 2021: Plaintiff was observed with rapid speech.[56]

- January 14, 2021: Plaintiff was talking very fast, her thought process was not linear, and she had cycling thoughts.[57]

- February 5, 2021: No abnormal mental-health observations noted and Plaintiff reported that she was "feeling much better than I was," as she was able to sleep more with the new medications.[58]

- February 24, 2021: She was observed with tight associations, fluid speech, and euthymic mood.[59]

- March 23, 2021: She was observed with rapid speech but within normal limits.[60]

---

[56] AR 484–87.

[57] AR 473–75.

[58] AR 471–72.

[59] AR 505–06.

[60] AR 496.

- April 15, 2021: She was observed with slightly tangential stream of thought although attention and speech were normal rate.[61]

- May 19, 2021: She reports that she has a new part-time job and that she believes the medications are working well as she has not been depressed, manic, or very anxious, and she was observed with fluid speech and tight associations.[62]

- July 22, 2021: She was observed with a slightly labile mood with linear thought stream, reporting that she forgot to take medications for several days due to her night shift.[63]

As this sampling of medical records reflect, Plaintiff's mental-health symptoms, particularly her rate of speech and her thought processes, were impacted when her symptoms waxed. As the ALJ recognized, Plaintiff's symptoms waned when she consistently took her medication as prescribed. Substantial evidence supports the ALJ's

---

[61] AR 494.

[62] AR 477.

[63] AR 582–83.

finding that Plaintiff's more disabling symptom reports were inconsistent with the medical evidence.[64] A full and fair review of the Plaintiff's symptom reports support a moderate-adaptation limitation as opined by Dr. Tomak (and possibly Dr. Johnson)—not the mild limitation as found by the ALJ.

3. <u>The ALJ did not err by finding MSW Kieffer's assessments unpersuasive.</u>

MSW Kieffer, who counseled Plaintiff for many years, completed a Mental Residual Functional Capacity assessment on January 20, 2021.[65] She checked that Plaintiff was markedly limited in her abilities to carry out very short simple instructions, sustain an ordinary routine without special supervision, and be aware of normal hazards and take

---

[64] *See* 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[65] AR 459–63. The parties agree that Ms. Kieffer does not qualify as a medical source. *See* 20 C.F.R. §§ 404.1502c(d), 416.902c(d).

appropriate precautions.[66] In each of the other listed mental activities, MSW Kieffer checked that Plaintiff was severely limited.[67] She also checked that Plaintiff was markedly limited in her ability to adapt or manage herself and extremely limited in her abilities to interact with others; understand, remember, or apply information; or concentrate, persist, or maintain pace.[68] She believed that Plaintiff would be off task more than 30 percent of the work day and would miss 4 or more days of work per month.[69] MSW Kieffer wrote:

> Carie has a very serious and persistent mental health disorder Bipolar II Disorder (F31.81) depressed/hypomanic. Carie has severe impairments due to diagnosis. Carie suffers prolonged dramatic shifts in her mood, energy, and ability to think and reason clearly. Carie has severe hypomania episodes that rapidly cause her to suffer extreme uncontrollable irritability, unpredictable judgment impairment, reckless decision making and unusual risk taking. Depression phase of Bipolar Disorder II causes Carie to suffer persistent feelings of sadness, irritability or anger, loss of interest in self-care and activities of daily living, excessive and inappropriate guilt, hopelessness, too

---

[66] AR 459–60.

[67] AR 459–60.

[68] AR 461.

[69] AR 462.

much or not enough sleep, appetite changes, fatigue, problems with concentration, feels of severe worthlessness, and thoughts of death/suicide. Bipolar Disorder II also causes Carie's co-existing psychiatric condition such as anxiety, and isolating, migraine headaches, and feelings of unwellness. Carie's severe mental illness causes patterns of instability of interpersonal relationships, her self-image and communication patterns; poor concentration and memory decline; sleep disturbances, symptoms of PTSD.[70]

The ALJ found MSW Kieffer's ratings and references to Plaintiff's symptoms wholly unsupported by the medical records, commenting that "such extreme limitations would essentially require institutionalization."[71] The ALJ also found that MSW Kieffer's ratings were more extreme than Plaintiff's own symptom testimony and inconsistent with the testifying medical expert's need for more medical records to rate Plaintiff's impairments during the closed period.[72]

This latter ground—that the testifying medical expert needed more medical information—was not a valid ground for the ALJ to reject MSW Kieffer's ratings, as MSW Kieffer had treated Plaintiff for several

---

[70] AR 462.

[71] AR 23.

[72] AR 23.

years and therefore had a broader base of information to form her assessments than the testifying medical expert.

Nonetheless, substantial evidence supports the ALJ's overall decision to find MSW Kieffer's assessments inconsistent with the record. Plaintiff concedes that the assessed limitations are extreme considering the record evidence but argues that MSW Kieffer's assessed limitations apply for periods of active bipolar. Contrary to Plaintiff's argument, the medical records during the closed period bely that Plaintiff's bipolar symptoms—even when waxing—were so severe as to substantiate MSW Kieffer's assessments. The observations noted in MSW Kieffer's treatment notes, and the observations and Plaintiff's reports memorialized in the other medical records, do not support MSW Kieffer's extreme assessments. For instance, although Plaintiff had rapid speech during her medication-management appointment in January 2021, her speech was still within normal limits, her affect was appropriate, her judgment and insight were within normal limits, and she reported an ability to do housework, work outside, watch a movie with her children, and follow along with the recent political news,

1    although her interest in politics had led to disagreements with family

2    and friends.[73]

3          Accordingly, the ALJ's decision to find MSW Kieffer's extreme

4    assessments unpersuasive is supported by substantial evidence.

5          4.    Summary

6          Although the ALJ erred by not finding bipolar disorder to be a

7    severe impairment and failed to explain why the adaptation limitations

8    recommended by Dr. Tomak (and Dr. Johnson) should not be adopted,

9    substantial evidence supports the ALJ's decision to reject Plaintiff's

10   more disabling symptom reports and MSW Kieffer's extreme

11   assessments. The ALJ's step-two error does not require a full remand

12   to develop the medical record—as there are no such records—or to

13   determine Plaintiff's work-related limitations for the closed period.

14   Instead, the adaptation limitations set forth by Dr. Tomak (and Dr.

15   Johnson) and Dr. Johnson's limitation to non-complex work are

16   accepted.

17

18   _____

19   [73] AR 484–87.

On remand, the ALJ is to obtain testimony from a vocational expert—either through written interrogatories or testimony at a hearing—as to whether there is work that exists in significant numbers in the national economy that Plaintiff can do given her age, education, work experience, and the following RFC: a full range of medium work in a routine, predictable work environment with no more than occasional changes, without complex instructions, and no travel required as a job duty.[74]

## IV.   Conclusion

Plaintiff establishes the ALJ erred at step two. To remedy the step-two error, a limited remand is directed.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

---

[74] The ALJ previously submitted written interrogatories to a vocational expert. AR 446–50. However, the hypothetical medium-work RFC did not include any non-exertional limitations. AR 452–53.

2.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g).**

3.   The Clerk's Office shall **TERM** the Commissioner's brief, **ECF No. 13**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of January 2026.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge